Willie WILSON, Appellant,

v.

COMMONWEALTH of
Kentucky, Appellee.

and

James Edward WILSON, Appellant,

v.

COMMONWEALTH of
Kentucky, Appellee.

and

David MUNCIE, Appellant,

v.

COMMONWEALTH of
Kentucky, Appellee.

Supreme Court of Kentucky.

May 23, 1985.

Julie Namkin, Asst. Public Advocate, Frankfort, for appellants.

David L. Armstrong, Atty. Gen., John S. Gillig, Asst. Atty. Gen., Frankfort, for appellee.

GANT, Justice.

## AFFIRMING

Willie Wilson, James Wilson, and David Muncie were each convicted by a jury in the Warren Circuit Court of conspiracy to commit first degree robbery and two counts of accomplice to second degree assault. Each man received sentences of seven years, ten years, and ten years, for the respective offenses. After a finding that they were persistent felons, James Wilson was sentenced to thirty-three years imprisonment and David Muncie was sentenced to thirty-six years imprisonment. Because certain issues raised are common to more than one of the appellants, these appeals were consolidated for review.

## FACTUAL BACKGROUND

On March 15, 1983, approximately thirty people were in the Fun Center in Bowling Green, Kentucky. There was a crap game at one of the pool tables and, so, there was a considerable amount of money on the table and in the players' hands. During the course of the crap game, three men and two women, who were unknown to the patrons, entered the Fun Center. After looking around for a few minutes, they left. About fifteen minutes later, the three men re-entered the Fun Center, armed with handguns. One of the men told everyone to hit the floor and one or more of the men opened fire, causing the patrons to dive for cover. Two people sustained gunshot wounds.

Bowling Green police officers arrived shortly thereafter and obtained a description of the suspects' vehicle. Officers spotted the car on the interstate and a high speed chase ensued. When the suspects' car became disabled, they pulled to the side of the road and four of them fled into a wooded area adjacent to the highway. Officers apprehended Yolanda Price, who had remained in the vehicle. During a search of the area, officers also arrested James Wilson, who was found hiding in some bushes. A pistol was located in the grass a short distance from James' hiding place.

Ms. Price provided a statement in which she implicated James Wilson, David Muncie, and a third man she later identified as Willie Wilson. Five of the Fun Center patrons identified James Wilson in a line-up, which included James and six other individuals.

At trial, James and David admitted that they had been at the Fun Center, but claimed that they were participants in the crap game. They further claimed that, because they had won a good deal of money, the other players tried to stop them from leaving. In an attempt to protect themselves, they had been forced to use their weapons. Both denied that Willie was present and claimed that the third man was Ms. Price's boyfriend. Willie Wilson claimed that he was in Louisville on the night in question and presented alibi witnesses.

Other facts will be discussed as they relate to particular issues.

## IDENTIFICATION PROCEDURES

Willie Wilson claims that any in-court identification concerning him should have been suppressed because he was denied his right to counsel at a pre-trial confrontation with witnesses and because this confrontation was so unduly suggestive that he was denied his right to due process. When Willie was brought into court on June 14, 1983, for arraignment, he was handcuffed

to James Wilson. At the time, several witnesses were present in the courtroom in order to testify at a suppression hearing concerning James Wilson. One or more of these witnesses had previously identified James as one of the robbers.

 Because Willie had been indicted over two months earlier, he was entitled to counsel at any pre-trial confrontation. *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). However, the record clearly refutes his claim concerning right to counsel, since the arraignment order recites that Willie's counsel was present at that time. Therefore, we find no merit in this argument.

 We must next examine Willie's argument that the confrontation was unduly suggestive. We would first note that the fact that a defendant is handcuffed does not, by itself, require suppression of a later in-court identification. *Brown v. Commonwealth*, Ky.App., 564 S.W.2d 24 (1978). In *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), the United States Supreme Court concluded that the primary evil to be avoided in such pre-trial confrontations is the "very substantial likelihood of irreparable misidentification." We agree with the Ninth Circuit Court of Appeals that *Biggers* established a two-prong due process test in this area. *United States v. Freie*, 545 F.2d 1217 (9th Cir. 1976). When examining a pre-trial confrontation, this court must first determine whether the confrontation procedures employed by the police were "suggestive." If we conclude that they were suggestive, we must then assess the possibility that the witness would make an irreparable misidentification, based upon the totality to the circumstances and in light of the five factors enumerated in *Biggers, supra.*

 We conclude that Willie Wilson's confrontation with these witnesses was not violative of his right to due process under *Neil v. Biggers, supra.* Implicit in the first prong of the *Biggers* test is a finding that the government had some hand in arranging the confrontation. During the course of a prosecution, there will invariably be chance confrontations between an accused and witnesses for the Commonwealth. We fail to perceive a real danger to the defendant in such situations where the Commonwealth has not arranged the confrontation and there is no attempt by its agents to indicate to the witness(es) that "that's the man." In our view, such a confrontation is less suggestive than an in-court identification, where a witness need merely look to the defense table. We therefore hold that, in order to establish that a pre-trial confrontation was unduly suggestive, the defendant must first show that the government's agents arranged the confrontation or took some action during the confrontation which singled out the defendant. Because Willie Wilson has failed to show either of these actions on the Commonwealth's part, we find that the trial court properly refused to suppress the in-court identification.

 James Wilson contends that his in-court identification should have been suppressed because the police station line-up was unduly suggestive. Two of the patrons who identified James during the line-up were Moses Loving and Chester Hibbitt. James established at trial that Loving knew four or five of the six other men in the line-up and that Hibbit knew all of the men in the line-up except James. It should also be noted that the trial court, in the order denying the motion to suppress, noted that the procedure used had "tainted" the line-up, but found an independent origin for the identifications.

In examining James' due process claim, we must again conduct the above-mentioned two-prong test. Because it is clear that the police conducted the line-up, James has established that the government's agents arranged this confrontation. We also believe that it is clear from the evidence that the procedure was unduly suggestive as regards the identification by these two witnesses. Therefore, we must examine the second prong of the *Biggers* test—the possibility that these two witnesses would make an "irreparable misidentifi-

cation". After examining the testimony of these two men in view of the five factors set out in *Biggers* and under the totality of the circumstances, we conclude that their in-court identification of James Wilson constituted a violation of his due process rights. We must now determine whether this violation was harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

■ James admitted that he was in the Fun Center. He was found hiding in the bushes after a high speed chase from the scene of the robbery, with a gun lying nearby. There is no indication that the line-up identification by the other three patrons was tainted. Three additional patrons, who did not view the line-up, made in-court identifications of James as one of the robbers. Finally, Ms. Price and the other female companion identified James as one of the robbers. Based upon this overwhelming proof of guilt, we find that the trial court's error in refusing to suppress the in-court identifications by Lovett and Hibbitt was harmless beyond a reasonable doubt.

■ Finally, Willie Wilson and David Muncie argue that they were deprived of their right to due process because the trial court refused their requests for pre-trial line-ups. Both concede that there is no constitutional right to such a procedure, but cite the United States Supreme Court's decision in *Moore v. Illinois*, 434 U.S. 220, 98 S.Ct. 458, 54 L.Ed.2d 424 (1977), for the proposition that such a line-up may insure the reliability of identification evidence. We note that, in *Moore*, the Supreme Court acknowledged that such a procedure is normally within the sound discretion of the trial court. We agree and hold that it is within the sound discretion of the trial court to determine whether an independent pre-trial line-up is necessary. We further find that the appellants have failed to show an abuse of discretion by the trial court in this instance. Willie Wilson had altered his appearance since the time of the offense. David Muncie's motion was not made until the day of trial and was, therefore, untimely.

## MOTION FOR SEPARATE TRIALS

■ James and Willie Wilson each argue that their convictions must be reversed because the trial court abused its discretion in refusing to grant them separate trials. It should first be noted that a motion for such relief must be made before the jury is sworn. RCr 9.16. This court will not reverse a conviction for failure to grant separate trials unless we are clearly convinced that prejudice occurred and that the likelihood of prejudice was so clearly demonstrated to the trial judge as to make his failure to grant severance an abuse of discretion. *Rachel v. Commonwealth*, Ky., 523 S.W.2d 395 (1975).

■ Prior to the jury being sworn, James and Willie each moved for separate trials. James claimed that he would be prejudiced by evidence that Willie and David Muncie had stolen cars during their efforts to elude the authorities after the robbery. The trial court overruled the motion, but cautioned the prosecutor about going into the actions of the other two defendants. There is no indication that the prosecutor failed to heed the judge's warning on this matter. Willie claimed that he would be prejudiced during trial due to the conflicting defenses. Willie's claim is simply not supported by the evidence. He claimed that he was in Louisville at the time of the robbery. Although James testified that he was in the Fun Center at the time of the robbery, he testified that Willie was not present. As the Commonwealth points out, the defenses dovetailed. Neither appellant has shown that he was prejudiced by the joint trial.

■ Although each appellant raised additional grounds for severance during the trial, these grounds were not properly presented to the trial court before the swearing of the jury and, so, will not be considered on appeal. RCr 9.16.

## JAMES WILSON'S PFO CONVICTION

■ James Wilson contends that his PFO conviction must be reversed, under *Hon v. Commonwealth*, Ky., 670 S.W.2d 851 (1984), because no direct evidence was presented to the jury that James was on parole at the time the robbery occurred. KRS 532.080(3)(c)2. We disagree.

During the PFO proceedings, Lucie Knight, a Probation and Parole officer, testified that James had been under her supervision because he was on parole, that he had been on her caseload since September 23, 1982, and that he was on her caseload because of a fourteen year sentence imposed on a 1979 conviction. James argues that, because Ms. Knight did not state that he was on parole on March 15, 1983, there was no direct evidence of that fact and his conviction must fall. This court recently rejected a similar argument in *Commonwealth v. Liuzzi*, Ky., 685 S.W.2d 556 (1985), in which we held that failure to ask any witness the ultimate question was not error. Evidence was presented that James was on parole at the time of the trial and had been since September 23, 1982. It is clearly permissible to allow the jury to determine that he was on parole on March 15, 1983, a date falling within that period.

## DOUBLE JEOPARDY

■ Finally, all three appellants argue that their convictions for both conspiracy to commit first degree robbery and accomplice to second degree assault violated their constitutional and statutory right against double jeopardy. Although this argument was not properly preserved, we will consider it on appeal. *Sherley v. Commonwealth*, Ky., 558 S.W.2d 615 (1977).

■ Appellants' premise for this argument is that proof of the elements which established the offense of accomplice to second degree assault also established the elements necessary to elevate the robbery charge to the first degree. We believe that the reasoning underlying this court's recent decision in *Polk v. Commonwealth*, Ky., 679 S.W.2d 231 (1984), is dispositive of this issue. In *Polk*, a majority of this court held that the determinative question regarding a double jeopardy claim is "whether in each offense there are additional acts of criminal misconduct which are unnecessary to the commission of the other offense". We also noted that this test focuses on the proof necessary to prove the statutory elements of each offense, rather than on the actual evidence presented at trial. *Id.*, at 233. Therefore, we must determine the minimum facts necessary to establish a completed offense under each statute and, based upon these minimum statutory elements, determine if an additional fact must be proved for each completed offense.

First degree robbery is defined by KRS 515.020(1) as:

(1) A person is guilty of robbery in the first degree when, in the course of committing theft, he uses or threatens the immediate use of physical force upon another person with intent to accomplish the theft and when he:

(a) Causes physical injury to any person who is not a participant in the crime; or

(b) Is armed with a deadly weapon; or

(c) Uses or threatens the immediate use of a dangerous instrument upon any person who is not a participant in the crime.

Therefore a minimum set of facts which would establish a completed robbery under this statute would be where (1) in the course of committing theft, a person (2) threatens the immediate use of physical force upon another, and (3) is armed with a deadly weapon.

Second degree assault is defined by KRS 508.020 as:

(1) A person is guilty of assault in the second degree when:

(a) He intentionally causes serious physical injury to another person; or

(b) He intentionally causes physical injury to another person by means of a deadly weapon or a dangerous instrument; or

**860**

(c) He wantonly causes serious physical injury to another person by means of a deadly weapon or a dangerous instrument.

Therefore, the minimum facts required to establish the completed offense of second degree assault would be where a person (1) intentionally causes serious physical injury to another or (2) causes physical injury to another by using a deadly weapon or dangerous instrument.

In the present case, evidence was introduced which met the separate requirements for the crimes of robbery and assault. The offense of first degree robbery was completed when the appellants, in the course of committing a theft, threatened the patrons of the Fun Center with the immediate use of physical force and were armed with deadly weapons. If the appellants had abandoned their activity at that time, there is no question that they could have been convicted of first degree robbery. However, after completing the robbery, one or more of the appellants intentionally shot and wounded two of the patrons, thereby causing physical injury with their deadly weapons. This additional fact of intentionally causing physical injury with the deadly weapons they had armed themselves with satisfied the elements for the completed offense of second degree assault.

Since the conviction for each offense required proof of at least one additional element not required to prove the other, the convictions of appellants for both offenses do not violate either KRS 505.020 or the double jeopardy clause of the Kentucky or United States Constitutions. Based upon the above discussion, we also reject appellants' argument, raised for the first time during oral argument, that the two convictions violate the prohibition in KRS 506.110(1) against conviction for both conspiracy to commit a crime and the actual commission of that crime.

The judgments of the Warren Circuit Court are affirmed.

All concur except STEPHENSON, J., who did not sit.