Darby Ashley BARNES, Appellant

v.

COMMONWEALTH of Kentucky,
Appellee.

No. 2011–SC–000325–DG.

Supreme Court of Kentucky.

Feb. 21, 2013.

As Modified on Denial of Rehearing
Sept. 26, 2013.

V. Gene Lewter, Department of Public Advocacy, Assistant Public Advocate, Frankfort, KY, Counsel for Appellant.

Jack Conway, Attorney General, David Bryan Abner, Assistant Attorney General, Office of Criminal Appeals, Office of the Attorney General, Frankfort, KY, Counsel for Appellee.

Opinion of the Court by Justice CUNNINGHAM.

In the late evening before dark on May 24, 2009, Katherine Manning went to the home of her friends, Denny and Graziella Van Der Westhuyzen, at 417 Lakeshore Drive in Lexington, Kentucky. Her friends were out of town and had requested Manning to generally look after the house and, more especially, to water the plants on the outside of the house and to feed the cats. Her routine was to go twice daily, once in the morning and once in the evening.

As she was tending to these duties in the back of the house, she proceeded up some steps to the back deck. As she got to near the top of the steps, she looked into the sliding glass door and saw a person inside bending over removing the pole from the base of the door which secured it. Startled to find someone inside the house, she yelled at the person and inquired as to what he was doing there. The two stared at each other and then he disappeared into the house. Frightened, Manning went to the front of the house and learned that the front door was unlocked. She proceeded to her car and, after calling a friend and her father, called 911 and drove up the street a short distance to wait for law enforcement to arrive. She went back to the house when the police arrived and entered the home. She noticed that a pink bicycle which had been in the yard when she had arrived was then gone. An inspection of the home by the police revealed that entry had apparently been made through a cat door in the back. A glass panel on the back door was damaged and the door was unlocked. Upon returning home the following day, the owners of the home discovered that the master bedroom

had been disturbed and 20 pieces of jewelry were missing.

One of the detectives working the case, Steve Bryant, took a partial print from a jewelry box in the bedroom. Manning had described to the police that the man she saw would have been wearing glasses and was white, approximately 5'9" tall and from 18 to 22 years old, and she did not notice any facial hair. She also described him as wearing a dark colored shirt and khaki or brown shorts.

The next day, Detectives Franz and Wolff of the Lexington Metropolitan Police Department showed a six-photo lineup to Manning at her parents' home. The Appellant was not included in this group of pictures. She failed to identify anyone in that photo lineup. A couple of weeks later, on June 15, 2009, while the detectives were driving in the neighborhood looking for someone to fit the description Manning had given to them, they saw the Appellant, Darby Ashley Barnes. Since he generally met the description given to the police by Manning, they stopped and questioned him. After taking a picture of him, he was taken to the police station and interviewed concerning the burglary. He denied involvement in the crime. Appellant gave the peculiarly suspicious explanation that he had been going door to door on Lakeshore Drive looking for friends whose addresses he did not know. It is unclear from the testimony as to whether he was doing this on the date of the burglary or on June 15th, the date he was stopped and questioned.

The following day, a second six-photo lineup was presented to Manning. The Appellant was pictured along with five other photos, all similar in physical characteristics, as well as dark-rimmed glasses. Appellant's photo was one taken after he was arrested on other charges. All the other subjects appeared to be pictured in similar type mug shots. Manning immediately picked the Appellant from the lineup. She insisted she was 100% positive that that was the person whom she had seen inside the house on May 24th. After identifying the Appellant in the photo lineup, she was shown an 8x10 photo to reaffirm that she had selected the right person.

At trial, Manning positively identified the Appellant Barnes, although he was actually 38 years of age and there was some disparity in her previous description of his height and facial hair.

The Appellant was indicted and tried for second-degree burglary and for being a first-degree persistent felony offender. The jury found the Appellant guilty of second-degree burglary and enhanced to first-degree persistent felony offender and recommended a total sentence of fifteen years. The court sentenced the Appellant Barnes in accordance to the jury's recommendation.

Upon appeal to the Court of Appeals, his conviction was affirmed.

We granted discretionary review for the purpose of examining two issues raised by the Appellant.

### Photo lineup and subsequent display of picture

At trial, the Appellant did not object to either the identification made during the photo lineup or the in-court identification made at trial. Therefore, we must review the alleged error for palpable error.

Kentucky RCr 10.26 provides that a "palpable error which affects the substantial rights of a party may be considered . . . by an appellate court on appeal, even though insufficiently raised or preserved for review, and appropriate relief may be granted upon a determination that manifest injustice has resulted from the error." We find nothing about the photo lineup or the subsequent showing to Manning of the

8x10 picture to rise to the level of a "manifest injustice."

■ The standard of review concerning due process and pre-trial identification was established by the U.S. Supreme Court case of *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). These factors are: (1) the witness' opportunity to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the prior description of the criminal by the witness; (4) the amount of certainty at the confrontation; and (5) the time between the crime and confrontation. *Id.* at 199, 93 S.Ct. 375. *Biggers* established that basically an out-of-court identification is held to not violate due process if, from the "totality of the circumstances," the identification was reliable. *Id.*

■ There is a two-prong test as to evaluating the "totality of the circumstances" in the identification process. *King v. Commonwealth,* 142 S.W.3d 645, 649 (Ky.2004) (citing *Dillingham v. Commonwealth,* 995 S.W.2d 377, 383 (Ky. 1999)). The first consideration is whether the pre-trial identification procedure was impermissibly suggestive.

In this case, Manning failed to identify anyone that was presented to her in the initial photo lineup. Appellant Barnes' picture was not in that lineup. The second photo lineup was presented to her within three weeks after the incident and included the picture of the Appellant. That lineup was not impermissibly suggestive. All six individuals presented were white, appear to be within the relatively same age range of 25 to 40 of the Appellant, were wearing glasses, and had similar hairstyles. Four others had facial hair, two of which were almost identical to Appellant. Each face carried the same unsmiling expression. It was a good lineup and nothing impermissibly suggestive.

■ While unnecessary to confront, we address the second prong and find there's nothing to indicate or suggest that the witness Manning would make an "irreparable misidentification, based upon the totality of the circumstances and in light of the five factors enumerated in *Biggers.*" *Wilson v. Commonwealth,* 695 S.W.2d 854, 857 (Ky.1985).

Manning testified that her encounter with the Appellant lasted a "good five to eight seconds." It was an unobstructed daylight view of only 15 feet away. The Appellant was clearly framed within the sliding glass doors. Her attention to the person was unusually observant for two reasons. First, she was surprised to find that there was someone in the house. Secondly, she had been surprised on a previous housekeeping trip to the house when she saw a friend of the homeowner's son in the house. In that instance, unbeknownst to Manning, the friend was there with the homeowner's permission. Therefore, on the encounter with the Appellant, she was particularly focused in trying to determine if it was someone she recognized who would have been legitimately in the house.

While there were inaccuracies between Manning's initial description, including the height and age and facial hair, these do not rise to the level to undermine her strong identification in the photo lineup. It does not undermine the identification to the level of "manifest injustice." As we noted, the time between the crime and the confrontation was relatively short, approximately three weeks. She showed no recalcitrance in any of her photo identifications and was absolutely positive in her identification at trial.

■ Neither do we find error in the showing to Manning of the subsequent 8x10 photo. There's certainly nothing wrong with a witness being allowed to

reaffirm the accuracy of her previous identification as long as that previous identification has not been impermissibly suggestive or tainted. *People v. Jordan*, 2003 WL 21277267 (Cal.Ct.App. Jun. 03, 2003) (finding that showing a witness a single photo of the defendant to confirm the witness's previous identification was not unduly suggestive); *State v. Marsh*, 187 N.C.App. 235, 652 S.E.2d 744, 747–48 (2007) (overruled on other grounds by *State v. Tanner*, 364 N.C. 229, 695 S.E.2d 97 (2010)) (holding that no due process violation occurred where single photo identification was based upon identifier's own observations and recollection and was requested only to confirm defendant's identity).

We find no error in the pre-trial identification procedure or in the witness Manning's identification of the Appellant in trial. For sure, there is no error that rises to a "manifest injustice." Therefore, we affirm the lower court on that issue.

### Fingerprint testimony

■ Inexplicably, the evidence relied upon by the Appellant to support this issue has been totally misconstrued throughout the appellate process. It has been argued by Appellant that Steve Bryant of the Lexington Crime Scene Forensic Services Unit testified that he lifted a partial print off of the ring box in the bedroom and it was compared to the print of the Appellant. It is put forth by the Appellant that Bryant testified that only four points matched with the print of the Appellant, and since 10 points matching are required for a positive match there was no positive identification.

It has been argued to this Court that this partial matching was prejudicial to the Appellant. Said the Appellant in his brief: "[I]n this case the print was not a match ... because only four points matched." This misinterpretation of the evidence was

carried forward into the oral arguments of this case, which concentrated solely on the fingerprint issue. Appellant's counsel centered his whole oral argument to the Court that the fingerprints matched on four points, and that is how this Court perceived the argument:

> Justice Abramson: They have it was not a match if it required ten points. It didn't match on ten points but they have it matched on four points?
>
> Attorney: Yes.

This Court attempted to clarify this fact by questioning:

> Justice Noble (in a questioning tone): It was presented as a partial print with four matching points. If we had the rest of it, it would all match so we pretty well know it was this guy's print. This was in essence what the testimony amounted to?
>
> Attorney: Yes.

Other justices posed similar questions which were obviously based on this erroneous assumption.

The Appellant's argument is contrary to the evidence. The testimony of the witness stated that no comparison was ever made between the partial print lifted off the ring box and the print of the Appellant:

> Commonwealth's Attorney: Okay. In this particular case, on the print that you lifted from the ring box, did you—well, how many points? Did you take a look at that?
>
> Bryant: Yeah, I took a look at that, and there was only four points in that print. And again, that's a partial print. It's never a full fingerprint; it's always a partial or a piece of a fingerprint. But in that fingerprint that came off of that ring box there were four points.
>
> Bryant: The fingerprint we took off the ring box had only four points.

Commonwealth's Attorney: Okay, so based on the fact that there were only four points, were you able to do any find of further comparison?

Bryant: No.

The Commonwealth's Attorney, in her closing argument, talked about the finger prints for ten seconds out of her whole argument: "Detective Bryant tried to pull fingerprints off the ring box but it wasn't a good enough print, it had only four points, so he couldn't make a comparison at all." In fact, that is precisely what the officer testified, i.e., no comparison was made to the Appellant's prints. The Appellant has misconstrued the meaning of the testimony that was given.

The integrity and quality of an investigation of a criminal prosecution is always relevant. Within reasonable limits and as long as inadmissible evidence does not seep into the process, the Commonwealth may present evidence as to the thoroughness of the investigation. Based upon the testimony that the jury actually heard in this case, there was no error.

For all the herein stated reasons, the judgment is affirmed.

MINTON, C.J.; ABRAMSON, NOBLE, SCOTT, and VENTERS, JJ., sitting. All concur.