RENDERED:  AUGUST 14, 2020; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2018-CA-001877-MR

RICHARD LEE CLARK                                    APPELLANT


APPEAL FROM JEFFERSON CIRCUIT COURT
v.              HONORABLE BARRY WILLETT, JUDGE
ACTION NO. 16-CR-001301


COMMONWEALTH OF KENTUCKY                              APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CLAYTON, CHIEF JUDGE; ACREE AND TAYLOR, JUDGES.

ACREE, JUDGE:  Richard Clark appeals the Jefferson Circuit Court's order

denying his motion to suppress evidence.  Finding no error, we affirm.

## BACKGROUND

Around 7:00 a.m. on January 2, 2016, Patrick Richardson was awakened by the shouts of his neighbor, Tony Fox. Richardson went outside and saw Fox wrestling a person in his driveway. Fox told Richardson that the person was trying to steal tools from Richardson's garage. At the edge of the driveway was a car with the engine running. Richardson's tools were lying next to it.

Richardson approached the would-be robber from behind and pulled him to the ground. At various points, Richardson had his hands on the person's collar, arms, waist, and was face-to-face with the suspect. The police were called, but the suspect fled on foot, leaving the car and a jacket behind.

When the police arrived, Richardson gave a description of the suspect – a short, white male with blondish-brown hair. The police ran the tags for the car left running in the driveway. The vehicle was registered to Richard Clark. At the scene, police recovered the suspect's jacket, which contained a prescription pill bottle. The name on the bottle's label was Richard Clark. Several hours later, while waiting on the tow truck to remove the car, Officer McGaha retrieved a photograph of Richard Clark on the laptop mounted in his cruiser. Officer McGaha had no intention of showing Richardson the photograph; however, unbeknownst to Officer McGaha, Richardson walked up to the cruiser and saw the picture of Clark. Richardson immediately identified the man in the picture as the

person he wrestled in the driveway. Officer McGaha allowed Richardson to take a picture of the photo with his cellphone camera.

Clark was arrested and indicted on the following counts: (1) first-degree robbery; (2) first-degree burglary; and (3) being a first-degree persistent felony offender. He moved to suppress the evidence of Richardson's identification. After a hearing during which Officer McGaha and Richardson testified, the circuit court denied Clark's motion. The court found Richardson's notice of Clark's photograph both inadvertent and fortuitous, and that his spontaneous identification of Clark was not unnecessarily suggestive. The circuit court concluded the identification was reliable based on the *Biggers* factors.[1]

Clark entered an *Alford*[2] plea of guilty, reserving his right to appeal the order denying his suppression motion. He was sentenced to a total of seventeen years. The judgment was entered on August 22, 2018. This appeal followed.

---

[1] The Supreme Court of the United States called these factors "general guidelines" that had emerged over the years from several cases that addressed "the relationship between suggestiveness and misidentification. It is, first of all, apparent that the primary evil to be avoided is 'a very substantial likelihood of irreparable misidentification.'" *Neil v. Biggers*, 409 U.S. 188, 198, 93 S. Ct. 375, 381, 34 L. Ed. 2d 401 (1972) (quoting *Simmons v. United States*, 390 U.S. 377, 384, 88 S. Ct. 967, 971, 19 L. Ed. 2d 1247 (1968)).

[2] *North Carolina v. Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

## STANDARD OF REVIEW

The Supreme Court of Kentucky described the standard of review of denials of suppression motions related to eyewitness identification evidence as follows:

> [T]he trial court has a two-fold task. First, it must determine whether the photo array (or other identification procedure employed by police) was unduly suggestive, and if so (but only if so) it must then determine whether the identification was nevertheless sufficiently reliable in view of the totality of the circumstances. As with other suppression rulings, we review the trial court's findings of historical fact, if any, for clear error, but its ultimate application of the constitutional standards is a question of law which we review *de novo*.

*Jacobsen v. Commonwealth*, 376 S.W.3d 600, 606 (Ky. 2012) (citations omitted).

## ANALYSIS

Clark argues the identification was tainted due to improper police conduct and the trial court improperly applied the *Biggers* factors to the pre-trial identification. We disagree.

In *Biggers*, *supra*, the United States Supreme Court established a two-part test for determining if there is a due process violation, which the Supreme Court of Kentucky summarized in *Wilson v. Commonwealth*, 695 S.W.2d 854 (Ky. 1985). First, "[w]hen examining a pre-trial confrontation, this court must first determine whether the confrontation procedures employed by the police were 'suggestive.'" *Id.* at 857. Second, if the court determines that those procedures

-4-

were suggestive, "we must then assess the possibility that the witness would make an irreparable misidentification, based upon the totality [of] the circumstances and in light of the five factors enumerated in *Biggers*[.]" *Id.*

Implicit in *Wilson*'s first part – suggestiveness – is whether the government had a hand in arranging the confrontation with the suspect or his likeness. *Id.* There is no "real danger to the defendant in such situations where the Commonwealth has not arranged the confrontation and there is no attempt by its agents to indicate to the witness(es) that 'that's the man.'" *Id.* Therefore, to establish the pre-trial confrontation was unduly suggestive, the defendant must show the government's agents arranged the confrontation or took some action that singled out the defendant. *Id.* Clark failed to make such a showing.

Clark's evidence in support of the suggestiveness element focuses on two facts: (1) Richardson saw only one photograph; and (2) Officer McGaha allowed him to make his own copy of the photograph. Regarding the first fact, Clark offers nothing to support an assertion that Richardson's notice of the single photograph was not inadvertent and that Officer McGaha "had a hand" in arranging or suggesting a misidentification. Officer McGaha testified that he did not see Richardson approach and was caught off guard. (Video Record at 01:59:14-17.) It was not his intention for Richardson to view the photograph and he did not direct his attention to it. (*Id.*)

Allowing Richardson to have a copy of the photograph would only be problematic if it was given to him *after* the original identification had been suggested by the police. Subsequent identifications, like the initial one, would then be vulnerable to attack as a continuation of the original suggestion of misidentification, a misidentification reinforced by giving him a copy of the photograph. That series of events never occurred. The focus in this case is on Richardson's original identification and whether it was suggested by the government. What subsequently happened is not relevant here.

Because the focus is on "the relationship between suggestiveness and misidentification[,]" *Biggers*, 409 U.S. at 198, 93 S. Ct. at 381, there must be evidence of suggestiveness. Such evidence is lacking. Only "[i]f we conclude that [the identification procedures] were suggestive" must we "then assess the possibility that the witness would make an irreparable misidentification, based upon the totality to the circumstances and in light of the five factors enumerated in *Biggers*[.]" *Wilson*, 695 S.W.2d at 857. Officer McGaha did nothing to arrange Richardson's confrontation with the photograph of Clark. Although he pulled up the photograph, he did not approach Richardson, nor was he aware Richardson was approaching him.

Because there were no suggestive identification procedures here, such as there was in *Wilson*, no analysis of the totality of the circumstances was

-6-

necessary. However, if we examined this record to "assess the possibility [of] . . . an irreparable misidentification," *id.*, we would conclude there is not much possibility at all.

Consider the five *Biggers* factors set out by the Supreme Court of the United States, as follows:

> [T]he factors to be considered in evaluating the likelihood of misidentification include [1] the opportunity of the witness to view the criminal at the time of the crime, [2] the witness' degree of attention, [3] the accuracy of the witness' prior description of the criminal, [4] the level of certainty demonstrated by the witness at the confrontation, and [5] the length of time between the crime and the confrontation.

409 U.S. at 199-200, 93 S. Ct. at 382 (bracketed numerals added).

Richardson's opportunity to view the criminal was good. Although the struggle occurred just before sunrise, it lasted several minutes, long enough for Richardson to grab the criminal from behind, and to move around him until they were face-to-face.

There is nothing to suggest Richardson's degree of attention was limited in any way. It was the start of Richardson's day. He was alert to the shouts of his neighbor and came to his rescue.

Richardson's description of Clark, before seeing his photograph, was reasonably accurate. He described him as shorter than 5 feet 8 inches tall with blondish-brown hair. Clark is 5 feet 3 inches tall with brown hair.

When Richardson inadvertently saw Clark's photograph, he immediately identified the person in the photograph as the person with whom he had struggled in the driveway. He expressed certainty in his identification.

Finally, only a few hours had elapsed between the crime and the moment Richardson saw Clark's photograph. Richardson's memory of the events and of the criminal's appearance was fresh.

In sum, the record does not support the conclusion that police procedures suggested the identification of Clark as the criminal Richardson confronted. However, even if we presume the contrary, "under the 'totality of the circumstances' the identification was reliable even though the confrontation procedure was suggestive." *Id.*, 409 U.S. at 199, 93 S. Ct. at 382.

## CONCLUSION

For the foregoing reasons, we affirm the Jefferson Circuit Court's order denying suppression of Richardson's pre-trial identification.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Rob Eggert
Tricia Lister
Louisville, Kentucky

BRIEF FOR APPELLEE:

Andy Beshear
Attorney General of Kentucky

Kristin L. Condor
Assistant Attorney General
Frankfort, Kentucky