James C. SAVAGE, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

No. 94–SC–752–MR.

Supreme Court of Kentucky.

Oct. 19, 1995.

Rehearing Denied May 23, 1996.

Bruce P. Hackett, Deputy Appellate Defender of the Jefferson District Public Defender, Louisville (Daniel T. Goyette, Jefferson District Public Defender, of counsel), for Appellant.

Chris Gorman, Attorney General, Perry T. Ryan, Assistant Attorney General, Frankfort, for Appellee.

FUQUA, Justice.

Appellant was convicted in the Jefferson Circuit Court of robbery in the first degree and was sentenced to twenty years' imprisonment. Appellant now appeals to this Court as a matter of right.

Around midnight on the morning of February 8, 1994, the Dairy Mart on Berry Boulevard in Louisville was robbed by a short white man with brown hair and a mustache who was wearing a brown or dark tan jacket, dark pants, and dark shoes. The man, whose face was partially visible through the two-inch slits cut into the plastic grocery bag he was wearing over his head, brandished a twelve-inch knife and forced the two clerks to open the safe where the night's revenue had been placed. The robber made off with $2,000 to $3,000, dropping some of the rubber-banded stacks of cash and food stamps in the store and in the parking lot. The clerks observed the robber go into an apartment complex across the street. The police were notified and arrived shortly thereafter.

On the way to the scene, a police officer observed the appellant, fitting the physical description of the robber, leave the apartment complex across the street from the store. The appellant approached the officer's car and asked, "What's going on, sir?" Believing the appellant might be the robber, even though he was wearing different clothes, the officer had the appellant place his hands on the car. During a pat-down search, the officer felt a hard object, discovered to be a cigarette lighter, and a large "wad" of cash. The stack of cash contained $842 and $122 in food stamps. The appellant was brought to the Dairy Mart and each of the clerks separately identified the appellant as the man who robbed the store. One of the clerks identified marks on some of the stacks of cash she had made when she bundled the cash. The appellant was charged with and convicted of first-degree robbery and now appeals his conviction and subsequent twenty-year sentence.

The appellant advances two arguments on appeal. The first is that the trial court erred when it refused the defense request to instruct the jury on the lesser-included offense of receiving stolen property under $300. The second is that the trial court erred when it refused to suppress the in-court and out-of-court identification of the appellant by the robbery victims.

█ The first argument can be found meritless by simple mathematics. Of the $842 in cash and $122 in food stamps, the appellant claims $200 from one sister, $100 from an aunt, and $35 from another sister were all loans for the appellant to purchase a car. This accounts for only $335 of the $842, leaving $507 unaccounted for. The $122 in food stamps was claimed to be winnings from a dice game. The appellant cannot therefore claim that a reasonable juror could have concluded that he received stolen property valued at less than $300, as the $507, some of it in marked stacks, exceeds the amount required for a felony conviction under KRS 514.110. The trial court was correct in refusing to give an instruction on this lesser-included offense.

An instruction on a lesser included offense should not be given unless the evidence is such that a reasonable juror could doubt that the defendant is guilty of the crime charged but conclude that he is guilty of the lesser included offense. *Luttrell v. Commonwealth*, Ky., 554 S.W.2d 75, 78 (1977). *See Skinner v. Commonwealth*, Ky., 864 S.W.2d 290, 298 (1993). The appellant has failed to present any evidence that could support a reasonable juror finding that he was in possession of less than $300 in stolen money. The decision of the trial court not to grant such an instruction was appropriate. The trial court did, however, give an instruction for the felony offense of receiving stolen property over $300.

█ The appellant's second argument on appeal is that the trial court erred by allowing the in-court and out-of-court identification by the store clerks. There was a pretrial suppression hearing on the admissibility of the out-of-court identification. This "identification" occurred minutes after the robbery and consisted of an officer standing with the appellant in the parking lot while each clerk separately identified the appellant as having similar characteristics to those of the robber. The court expressly ruled that neither of the clerks actually made an identification, but observed that there were shared characteristics between the appellant and the robber. Such a "show-up" identification may be unreliable and suspect, but such show-ups are nonetheless necessary in some instances because they occur immediately after the commission of the crime and aid the police in either establishing probable cause or clearing a possible suspect, and the police do not need to delay the process in order to allow the suspect to have counsel present. *Stidham v. Commonwealth*, Ky., 444 S.W.2d 110, 111–112 (1969). As the show-up procedure is suggestive by its nature, the court "must then assess the possibility that the witness would make an irreparable misidentification, based upon the totality of the circumstances and in light of the five factors enumerated in [*Neil v. Biggers*, 409 U.S. 188, 199, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972)]." *Wilson v. Commonwealth*, Ky., 695 S.W.2d 854, 857 (1985). The five *Biggers* factors were met, and will be discussed in turn.

The first *Biggers* factor in the "totality of the circumstances" test is the opportunity to

view. The lights in the store were on, and even though the robber was wearing a bag over his head, his face was not entirely obscured. His stature, mustache, and hair color were all observable. The second factor is the witnesses' degree of attention. During the robbery, both clerks were able to view the robber for varying lengths of time and gave similar descriptions of the perpetrator. The third factor is the accuracy of prior descriptions. Before the show-up, the clerks provided the police with a description of the robber that later proved to match the appellant—short, Caucasian, mustache, brown hair, no glasses. The fourth factor is the level of certainty at confrontation. The clerks based their identification on the physical factors mentioned above which were readily observable with or without the bag mask. In overruling the motion to suppress, the court pointed out that the clerks in the show-up had not made an identification but had simply said that the robber and the appellant shared characteristics. The fifth factor is time between the crime and the confrontation. The time period between the robbery and the show-up was less than thirty minutes.

By analyzing the five *Biggers* factors, the totality of circumstances indicate that the appellant's due process rights were not violated. The in-trial identification was reliable, even though the pretrial identification may or may not have been suggestive, as shown by the same five *Biggers* factors discussed above. *See Jones v. Commonwealth*, Ky. App., 556 S.W.2d 918, 921 (1977). The admission of such evidence did not violate the appellant's due process rights. Furthermore, the in-court identification by the clerks of the stolen money found on the person of the appellant at the time of arrest provided evidence for the jury to consider whether the appellant was the robber.

For the foregoing reasons, the decision of the Jefferson Circuit Court is hereby affirmed.

All concur.