COMMONWEALTH of Kentucky,
APPELLANT

v.

William PARKER, Appellee.

No. 2012–SC–000164–DG.

Supreme Court of Kentucky.

Sept. 26, 2013.

Jack Conway, Attorney General of Kentucky, William Bryan Jones, Assistant Attorney General, for Appellant.

Linda Roberts Horsman, Assistant Public Advocate, for Appellee.

Opinion of the Court by Justice
KELLER.

The Commonwealth appeals from a Court of Appeals Opinion reversing the trial court's denial of Joseph William Parker's (Parker) motion to suppress. Having reviewed the record and the briefs and having heard the oral arguments of counsel, we reverse the Court of Appeals.

## I. FACTS.

On February 5, 2009, Susan Martin (Martin) was in the parking lot of a Lexington Target store when Parker grabbed her purse and struck her in the face. Parker and a friend, Justin Dwayne Masengale (Masengale), fled into a nearby neighborhood.

Martin went into the Target store and sought assistance from a Target employee, who called the police and EMS. While awaiting the arrival of emergency personnel, Rodney Branham (Branham), the store manager, got Martin a chair, gave her some water, got a phone so Martin could contact her husband, and asked her about the incident. Martin said that two men had accosted her as she entered the store and that one punched her in the face and stole her purse. She described the men as having light complexions and buzz haircuts, and said both men were wearing blue jeans. Furthermore, she stated that one man wore a dark hooded sweatshirt with a dark shirt underneath and a red ball cap, and the other wore a white sweatshirt with a powder blue shirt underneath and a blue hat. Martin said both sweatshirts had numbers or writing "like skateboarders wear" on them. A Target asset protection employee overheard this description and told Branham that she had seen the two men hanging around the store entrance. Branham asked that employee to see if she could find the two men on the store's security video. She did, and she and Branham made several still photographs of the men from the video. Branham then showed the photographs to Martin, and, without hesitation, she said the men in the photographs were the men who stole her purse.

In the meantime, Lt. Van Brackel of the Lexington Police Dept. arrived at the scene. Martin told Lt. Van Brackel what had happened and gave him the same description of the men that she had given to Branham. Lt. Van Brackel broadcast the description to officers in the area and advised them to be on the lookout for the men. He then saw Detective Iddings, who had been shopping, and asked for his assistance.

While Lt. Van Brackel was broadcasting the description, Branham received a telephone call from a customer who had witnessed the purse snatching. Branham gave the telephone to Lt. Van Brackel. The witness explained to Lt. Van Brackel that he had not stopped immediately because he had his four-year-old son with him. However, he called to say that he had just seen the two men in his neighbor-

hood. Lt. Van Brackel broadcast this information and officers apprehended Masengale shortly thereafter. Lt. Van Brackel drove Martin to where Masengale was being held, and she identified him as one of her assailants. Masengale was then transported to the police station for questioning, during which he identified Parker as the other man. Officers later arrested Parker and found Martin's cell phone and iPod in his possession.

Masengale moved to suppress the out-of-court identification by Martin, arguing that it was tainted when Branham showed Martin the photographs and by pre-identification actions of the police. He also argued that the Commonwealth had failed to turn over exculpatory evidence in violation of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Parker joined in Masengale's motion, arguing that, because Martin's identification of Masengale was tainted, Masengale's identification of him was likewise tainted.

During the evidentiary hearing on these motions, the Commonwealth stated that it would not be asking Martin to make an in-court identification of either Masengale or Parker. Therefore, the only identification issue before the trial court was whether the out-of-court identification of Masengale by Martin was defective. Martin did not testify during that hearing. The trial court expressed some concern about her failure to do so and offered to conduct a second hearing to give her an opportunity to testify. However, both defendants and the Commonwealth indicated that they believed the trial court had sufficient evidence to make a determination without Martin's testimony. The trial court, after making extensive findings of fact, denied the motions to suppress. Furthermore, the trial court found that there had been no *Brady* violation.

The Court of Appeals reversed, holding that, absent Martin's testimony, the trial court did not have sufficient evidence to determine that Martin's out-of-court identification of Masengale was reliable. The Court of Appeals did not address the alleged *Brady* violation, and neither party raises that issue on appeal to us; therefore we do not address it. We set forth additional facts below as necessary for our analysis of issues raised regarding Martin's identification of Masengale.

## II. STANDARD OF REVIEW.

We review a trial judge's findings of fact on a motion to suppress for clear error and his rulings on admissibility of evidence for an abuse of discretion. A trial judge abuses his discretion if his decision is "arbitrary, unreasonable, unfair, or unsupported by sound legal principles." (Internal citation omitted). *King v. Commonwealth,* 142 S.W.3d 645, 649 (Ky.2004).

## III. ANALYSIS.

The Commonwealth raises three issues on appeal: (1) Parker did not have standing to challenge Martin's identification of Masengale; (2) it adequately preserved that issue for our review; and (3) the trial court did not err in denying Parker's motion to suppress Martin's identification of Masengale. We agree with the Commonwealth as to the third issue; therefore, we need not address the first two.

The determination of whether identification testimony violates a defendant's due process rights involves a two-step process. *Dillingham v. Commonwealth,* Ky., 995 S.W.2d 377, 383 (1999) *quoting Thigpen v. Cory,* 804 F.2d 893, 895 (6th Cir.1986), *cert. denied sub nom. Foltz v. Thigpen,* 482 U.S. 918, 107 S.Ct. 3196, 96 L.Ed.2d 683 (1987); and *Simmons v. United States,* 390 U.S. 377, 384, 88

S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968). "First, the court examines the pre-identification encounters to determine whether they were unduly suggestive." *Id.* If not, the analysis ends and the identification testimony is allowed. "If so, 'the identification may still be admissible if under the totality of the circumstances the identification was reliable even though the [identification] procedure was suggestive.'" *Id. quoting Stewart v. Duckworth,* 93 F.3d 262, 265 (7th Cir.1996) and *Neil, supra.*

*King v. Commonwealth,* 142 S.W.3d 645, 649 (Ky.2004).

■ Martin's in person identification of Masengale is what is commonly called a "show-up" identification. Show-up identifications are inherently suggestive; however, they may be necessary to "aid the police in either establishing probable cause or clearing a possible suspect." *Savage v. Commonwealth,* 920 S.W.2d 512, 513 (Ky. 1995). Because the show-up procedure is inherently suggestive, the court must "assess the possibility that the witness would make an irreparable misidentification, based upon the totality of the circumstances and in light of the five factors enumerated in [*Neil v. Biggers,* 409 U.S. 188, 199, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972) ]." *Id.* at 513. The *Biggers* factors are: (1) the opportunity of the witness to view the defendant; (2) the witness's degree of attention; (3) the accuracy of any prior descriptions; (4) the level of the witness's certainty when confronting the defendant; and (5) the time between the crime and the confrontation of the defendant. *Id.* at 513–14.

The trial court noted that show-up identifications are suggestive by their nature. The trial court then determined that this show-up identification by Martin was unduly suggestive because of the pre-identification actions by the police. In particular, the trial court noted that Detective Iddings told Martin that she was being taken to see someone in custody who matched the description she had given. Furthermore, when Martin saw Masengale he was in front of a police car; he was lit by the police car's headlights and Detective Iddings's spotlight; and he was accompanied by a police officer. We agree with the trial court that these circumstances were unduly suggestive.

■ After making the preceding finding, the trial court, using the *Biggers* factors, found that Martin's show-up identification of Masengale was reliable. In doing so, the trial court noted that Martin had an opportunity to view Masengale and Parker when Parker struck her and stole her purse. The trial court found that Martin was paying attention because she was able to give fairly detailed descriptions of Masengale and Parker. Furthermore, the trial court noted that those descriptions, which were made before Branham showed Martin the photographs, were accurate. As to Martin's certainty, the trial court noted that witnesses testified that Martin did not hesitate when she identified Masengale and Parker in the photographs or when she identified Masengale in person. Finally, the trial court "guestimated" that the time between the robbery and the show-up identification was 15–20 minutes.

As noted above, the Court of Appeals held that, without Martin's testimony, the trial court had no proof on two of the *Biggers* factors—the opportunity to view the defendant and the degree of attention. Furthermore, the Court of Appeals determined that the trial court had no evidence regarding how much time had elapsed between the robbery and the show-up identification. Therefore, the Court of Appeals held that the trial court's denial of the motion to suppress was without any evidentiary foundation. We disagree.

■ Initially, we note that, when offered the opportunity to have a second hearing with Martin present, Parker stated that he believed the trial court had sufficient evidence to rule on the motion. Furthermore, Parker has not cited to, and we have not found, any case law indicating that the witness's testimony is required at a hearing on a motion to suppress that witness's identification of a defendant. As with other matters, the judge, as fact finder, is permitted to draw reasonable inferences from the evidence. *See Cantrell v. Commonwealth*, 288 S.W.3d 291, 296 (Ky.2009). "A reasonable inference is one in accordance with reason or sound thinking and within the bounds of common sense without regard to extremes or excess. It is a process of reasoning by which a proposition is deduced as a logical consequence from other facts already proven." *Martin v. Commonwealth*, 13 S.W.3d 232, 235 (Ky. 1999). As noted by the trial court, Martin gave detailed and accurate descriptions of Masengale and Parker before she was shown the photographs. The trial court's findings that Martin had an adequate opportunity to view Parker and Masengale and that she was paying attention are a logical consequence of reasoning from these facts. Therefore, we hold that the trial court's findings on these two *Biggers* factors were not erroneous.

Furthermore, although there was no direct testimony regarding the lapse of time, Det. Iddings's report, which was in evidence, indicates that the robbery took place at approximately 8:00 p.m., and he began questioning Masengale at 11:30 p.m. Therefore, even though there was no evidence that the events were only 15 to 20 minutes apart, there was evidence that they occurred less than three and a half hours apart. That is a sufficiently narrow timeframe to support the trial court's finding that the show-up identification was reliable.

## IV. CONCLUSION.

Because the trial court's findings were supported by evidence of substance, we reverse the Court of Appeals.

All sitting. MINTON, C.J., ABRAMSON, NOBLE and VENTERS, JJ., concur. CUNNINGHAM, J., concurs in result only by separate opinion in which SCOTT, J., joins.

CUNNINGHAM, J., Concurring in Result Only:

I concur in result and applaud the excellent writing of Justice Keller. However, I believe we leap frog over a critical threshold of any constitutional analysis. That is, we must first address Parker's standing to challenge Martin's out-of-court identification of Masengale.

Whether an accused has standing to challenge an in-person identification of a co-defendant is one of first impression in this Commonwealth. Nonetheless, other jurisdictions that have been presented with this question have initially analyzed the issue of standing. *See United States v. Jones*, 652 F.Supp. 1561, 1572 (S.D.N.Y. 1986) ("[Defendant] lacks standing to constitutionally challenge the identification of individuals other than himself."); *State v. Wilkins*, 749 S.W.2d 753, 755 (Tenn.Crim. App.1988) (co-defendants lacked standing to constitutionally challenge the line-up identification of the defendant); *Burton v. State*, 442 S.W.2d 354, 359 (Tex.Crim.App. 1969) (defendant lacked standing to challenge the identification procedures used to identify co-defendant in a line-up).

As the aforementioned cases illustrate, a determination of Parker's standing is where this Court's analysis should commence. *See, e.g., Ordway v. Commonwealth*, 352 S.W.3d 584, 592 (Ky.2011) ("In addressing Appellant's claims, the parties

have overlooked a critical circumstance, i.e., Appellant never established standing to contest the search.").

Notwithstanding the novelty of this issue, it is certainly analogous to cases in which the accused attempts to suppress evidence obtained by the illegal search or seizure of another's person or property. The U.S. Supreme Court has repeatedly held that one cannot assert another person's Fourth Amendment rights. *See Rakas v. Illinois,* 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978) (passengers cannot challenge the constitutionality of the search of another's vehicle); *Rawlings v. Kentucky,* 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980) (defendant cannot dispute the search of his girlfriend's purse).

There is no reason to apply a different rule to out-of-court identifications. It follows then that, since Parker is claiming a constitutional violation of Masengale's rights, he has no standing to complain. Therefore, I concur in result only.

SCOTT, J., joins.