CORRECTED: OCTOBER 20, 2017
RENDERED: SEPTEMBER 28, 2017
TO BE PUBLISHED

# Supreme Court of Kentucky

## FINAL

2016-SC-000021-MR

DATE 10/19/17 Kim Redmon, DC

JOHN FAIRLEY III                                                    APPELLANT

ON APPEAL FROM CHRISTIAN CIRCUIT COURT
V.                    HONORABLE ANDREW C. SELF, JUDGE
NO. 14-CR-00551

COMMONWEALTH OF KENTUCKY                                    APPELLEE

**OPINION OF THE COURT BY JUSTICE HUGHES**

**AFFIRMING**

John Fairley III appeals as a matter of right from a judgment of the Christian Circuit Court sentencing him to twenty years' imprisonment for first-degree robbery, receiving stolen property (firearm), first-degree possession of a controlled substance (while armed), and possession of marijuana (while armed). Fairley alleges that the trial court erred by permitting the victim to make an in-court identification and by refusing to give an instruction for the lesser-included offense of facilitation to first-degree robbery. Fairley also raises two unpreserved errors: 1) that his conviction for receiving stolen property based on a stolen handgun was manifestly unjust and 2) that the Commonwealth's Attorney improperly questioned him about a prior assault. For the following reasons, we affirm the judgment and sentence.

## FACTS AND PROCEDURAL HISTORY

On September 2, 2014, Charles "Bird Dog" Page left his home to visit his brother, Earl, in Hopkinsville, Kentucky. While walking to Earl's residence, Page observed a maroon colored vehicle, which for some unspecified reason he found suspicious. Page watched the vehicle pull into a parking lot and he continued on his way to his brother's home. Upon reaching Earl's residence, Page realized that he had forgotten his key. As Page left to meet his brother to get a key to the house, he once again saw the maroon car.

Concerned about the maroon car's reappearance, Page hitched a ride with two African-American men in a blue car. After driving for some time, the driver turned down an alley. Subsequently, the passenger in the front seat (later identified by Page as Fairley) pointed a handgun at Page and commanded "Give me your money." Page fled the vehicle and ran towards a law office. Fairley gave chase and struck Page in the back of the head with his pistol. Page then began to yell for help.

Hearing the disturbance, Lucius Hawes, exited his law office and saw both men. Hawes observed an African-American man with dreadlocks, dressed in dark clothing, and carrying a large semi-automatic pistol, fleeing the scene headed in the direction of Clay Street. Subsequently, Hawes provided aid to Page, whose head wound was bleeding profusely.

Emergency services were contacted and shortly thereafter an ambulance arrived to treat Page. While receiving medical treatment, Page informed Emergency Technician Nicholas Marlow that two African-American men had

2

assaulted him with a pistol. Page was initially treated at a local hospital, but was later medically evacuated by helicopter to a hospital in Tennessee. Page's injuries included a severe laceration and a broken nose. Later, when interviewed by the police, Page explained that the person who struck him had also stolen money from him.

During the resulting police investigation, investigators received tips which suggested Fairley's involvement in the robbery. Police also learned that at the time of the robbery Fairley had been wearing a GPS ankle monitor as part of a court-ordered home incarceration. According to the monitoring company, Fairley's monitoring device was registered as being near Hawes's office and moving away from that location towards Clay Street at the time of the robbery.

The police interviewed Fairley on September 3, 2014, at which time he claimed to have been driving a red car on the day of the robbery. He noted that he was away from his home that day as he was submitting an employment application. The following day, September 4, 2014, police using GPS tracking located Fairley sitting alone in the back seat of a white vehicle parked in a vacant lot. On top of the transmission tunnel in the rear of the vehicle, approximately a foot away from Fairley, was a firearm which police later learned had previously been reported stolen. Also in the vacant lot was a blue Malibu vehicle which was registered to Fairley's mother.

After Fairley's arrest[1] he was again interviewed by the police about the Page robbery. In his second interview, Fairley initially claimed that he had been at his home during the time of the robbery. However, later in the interview, he stated that he had witnessed someone attacking Page and he gave that person a ride away from the area.

A later search of the blue Malibu pursuant to a warrant led to the recovery of quantities of cocaine and marijuana. Additionally, during a search of Fairley's home, police recovered a pair of socks which appeared to have blood stains on them. Subsequent forensic testing established the presence of blood on the passenger's side door handle of the blue Malibu, the firearm, and the socks. The DNA profile for those blood stains was a match for Page at all loci, with an estimated frequency of one in ninety-nine quintillion based on the relevant United States population.

In September 2015, Fairley was tried by the Christian Circuit Court and found guilty of first-degree robbery, receiving stolen property (firearm), first-degree possession of a controlled substance (while armed), and possession of marijuana (while armed). The jury recommended the maximum penalty for each offense, but recommended that those sentences be served concurrently for a total sentence of twenty years' imprisonment. The trial court sentenced Fairley in conformance with the jury's recommendation.

---

[1] It appears Fairley was arrested due to violation of court-ordered conditions attached to his release on home incarceration.

4

## I. The Trial Court Properly Permitted the Victim to Make an In-Court Identification of Fairley.

Fairley argues that the trial court erred by permitting Page to make an in-court identification. Specifically, Fairley contends that as Page was unable to identify him in a photographic lineup, that he should have been barred from making an in-court identification.[2] Alternatively, Fairley requests that the Court remand this case for a hearing to assess whether the in-court identification satisfies the factors set forth in *Neil v. Biggers*, 409 U.S. 188, 93 S. Ct. 375 (1972). We reject both arguments.

After Fairley was apprehended, Detective Green showed Page a photographic lineup, but he was unable to identify Fairley as the perpetrator. However, prior to trial, Page informed the prosecutor that he would be able to identify Fairley. At a pretrial conference held in September 2015, the prosecutor informed the trial court and Fairley of Page's statement. Fairley, who at that time was functioning as his own counsel, responded by saying "[t]o me, I feel like that shouldn't be allowed because if he couldn't do it then, how all of a sudden you can do it now?" The trial court explained that it would not bar Page from making an in-court identification and that Fairley could cross-examine him on this issue. During the trial, Page identified Fairley as the man who robbed him. Page explained that he initially was fearful of identifying

---

[2] Fairley states that the admission of the in-court identification violated his right to due process under the Fourteenth Amendment to the United States Constitution and Section 11 of the Kentucky Constitution.

Fairley. Further, Page was concerned that identifying Fairley would lead to the revelation that the stolen money had been acquired through illegal gambling. Notably, Fairley did not object to Page's in-court identification, but did question him about the identification as discussed below.

While Fairley did not object to Page's in-court identification at trial, we conclude that his objection prior to trial was sufficient to preserve this issue for appellate review. Admittedly, this is a close call, but we choose to construe Fairley's pretrial complaint as an objection to Page's in-court identification, recognizing that *pro se* litigants should be afforded a degree of latitude in making their arguments. *See Commonwealth v. Miller*, 416 S.W.2d 358, 360 (Ky. 1967) (explaining that *pro se* litigants are afforded a different standard than that applied to those with legal counsel). Accordingly, we review the trial court's decision to admit evidence under an abuse of discretion standard. *Clark v. Commonwealth*, 223 S.W.3d 90, 95 (Ky. 2007) (citing *Brewer v. Commonwealth*, 206 S.W.3d 313, 320 (Ky. 2006)). The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles. *Goodyear Tire & Rubber Co. v. Thompson*, 11 S.W.3d 575, 581 (Ky. 2000) (*citing Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999)).

We reject Fairley's first argument that Page's inability to identify him in a photographic lineup should bar him from making an in-court identification. As we have previously explained "the failure of a witness to identify a suspect from a photographic line-up does not prevent that witness from later

6

identifying a suspect in court." *Thompson v. Commonwealth,* 2003-SC-0252-MR, 2004 WL 2624165, 6 (Ky. 2004) (citing *United States v. Dobson,* 512 F.2d 615, 616 (6th Cir. 1975)); *United States v. Briggs,* 700 F.2d 408, 413 (7th Cir. 1983)).[3] As the United States Court of Appeals for the Sixth Circuit observed:

> The fact that eye witnesses to an occurrence cannot make a positive identification of an individual from an examination of photographs of a number of persons, does not necessarily detract from the validity of their in-court identification where they see the individual in person. The weight to be given to their in-court identification is for the jury to determine.

*United States v. Black,* 412 F.2d 687, 689 (6th Cir. 1969). *See also United States v. De Leon-Quinones,* 588 F.3d 748, 755 (1st Cir. 2009) ("To allow a failed identification to always bar a later identification would make little sense.").

We agree that the proper course is to permit the witness to attempt to identify the suspect in court and, if an identification is made, allow the defense to thoroughly cross-examine the witness concerning his failure to make a prior identification. The jury is fully capable of determining what weight to assign to the in-court identification. In this case, Fairley cross-examined Page regarding inconsistencies in the description of his assailant to the police and the way that Fairley appeared at the time of trial as well as his failure to identify Fairley pretrial in the photo array. This allowed the jury to decide what weight to give

---

[3] We cite to *Thompson,* an unpublished opinion of this Court, as we find "no published opinion that would adequately address the issue before the court." CR 76.28(4)(c).

Page's identification of Fairley. Accordingly, the trial court did not abuse its discretion in permitting the introduction of this evidence.

Alternatively, Fairley argues that Page's in-court identification should have been assessed by the trial court under the factors set forth in *Biggers* before Page was allowed to testify.[4] He requests that this Court remand the case for an evidentiary hearing.

In *Biggers*, the Supreme Court set forth a two-prong due process test for considering an identification by a witness following impermissible suggestive pretrial procedures such as a photo array or line-up. In *Wilson v. Commonwealth*, 695 S.W.2d 854, 857 (Ky. 1985), this Court summarized the requirements of the *Biggers* test. First, "[w]hen examining a pretrial confrontation, this [C]ourt must first determine whether the confrontation procedures employed by the police were 'suggestive.'" *Id.* Second, if the Court determines that those procedures were suggestive, "we must then assess the possibility that the witness would make an irreparable misidentification, based upon the totality [of] the circumstances and in light of the five factors enumerated in *Biggers.*" *Id.*

Fairley requests this Court extend *Biggers* to apply to in-court identifications. In support of this argument, Fairley relies on *Kennaugh v.*

---

[4] "The *Biggers* factors are: (1) the opportunity of the witness to view the defendant; (2) the witness's degree of attention; (3) the accuracy of any prior descriptions; (4) the level of the witness's certainty when confronting the defendant; and (5) the time between the crime and the confrontation of the defendant." *Commonwealth v. Parker*, 409 S.W.3d 350, 353 (Ky. 2013) (citing *Savage v. Commonwealth*, 920 S.W.2d 512, 513-14 (Ky. 1995)).

*Miller*, 289 F.3d 36 (2nd Cir. 2002). The *Kennaugh* Court was faced with an issue similar to that presented in the case at bar – namely a witness failed to identify the accused prior to trial after reviewing a line-up and photo arrays, but at trial made an in-court identification. *Id.* at 39-40. Ultimately, the *Kennaugh* Court concluded that the application of the *Biggers* test was not mandatory for state courts under these circumstances, but that state courts were obligated to take actions to ensure that due process requirements were respected. *Id.* at 45-46. The *Kennaugh* Court also noted that "the Fourth, Fifth, Sixth, Eighth, Ninth, and Eleventh Circuits have held that in-court identification testimony in the absence of a pretrial identification must satisfy the *Manson* [*v. Brathwaite*, 432 U.S. 98, 97 S. Ct. 2243 (1977)] reliability standard, either by meeting the *Biggers* requirements or in other ways." *Id.* at 47 (citations omitted).[5]

However, over the years a significant number of jurisdictions have rejected the application of *Biggers* to in-court identifications. *See, e.g., United States v. Domina*, 784 F.2d 1361, 1369 (9th Cir. 1986) (declining to extend *Biggers* to an in-court identification, noting that "[t]he Supreme Court has not extended its exclusionary rule to in-court identification procedures that are suggestive because of the trial setting."); *State v. Lewis*, 609 S.E.2d 515, 518

---

[5] Fairley also cites this Court to *Commonwealth v. Crayton*, 21 N.E.3d 157, 169 (Mass. 2014), in which Massachusetts adopted a new rule mandating that "[w]here an eyewitness has not participated before trial in an identification procedure, we shall treat the in-court identification as an in-court showup, and shall admit it in evidence only where there is 'good reason' for its admission."

(S.C. 2005) ("We conclude, as the majority of courts have, that *Neil v. Biggers* does not apply to in-court identifications and that the remedy for any alleged suggestiveness of an in-court identification is cross-examination and argument.").

Although the relatively recent opinion in *Perry v. New Hampshire*, 565 U.S. 228 (2012), did not involve an in-court identification (and thus did not settle the debate beyond the requirements of federal due process on the facts presented[6]), it does give strong support for the limitation of *Biggers,* as well as its predecessors and progeny, to out-of-court identifications resulting from suggestive circumstances arranged by the police. In *Perry,* the police were interviewing a woman in her apartment who had witnessed a man breaking into cars in the building's parking lot. When asked about the description of the man she saw, the woman walked to her kitchen window and pointed to a man standing next to a police officer in the parking lot, indicating he was the man. She subsequently was unable to identify Perry in a photo array. At trial, the woman and the police officer who interviewed her both testified about her pretrial "kitchen window" identification.

Framing the issue presented as "the reliability of an eyewitness identification made under suggestive circumstances not arranged by the

---

[6] Perry was tried in a New Hampshire state court and raised a federal due process argument regarding a pretrial identification. In *Perry,* the United States Supreme Court addressed what the federal Due Process Clause requires in those circumstances. States are, of course, free to set their own bar for admissibility of pretrial and in-court identifications higher than that set by the Supreme Court.

police," Justice Ginsburg, writing for an 8-1 majority, reviewed the line of cases beginning with *Stovall v. Denno*, 388 U.S. 293 (1967) and culminating with *Biggers* and *Manson.* 565 U.S. at 236. The Court rejected the idea that trial judges should "prescreen eyewitness evidence for reliability any time an identification is made under suggestive circumstances." *Id.* at 240. The Court noted that a primary aim of the *Biggers* line of cases was deterrence of law enforcement's use of improper lineups, showups, and photo arrays, a factor clearly not present in the case before it. *Id.* at 241. Perry's focus on isolated phrases in the case law regarding the "reliability" of evidence "would open the door to judicial preview, under the banner of due process, of most, if not all eyewitness identifications." *Id.* at 243. Pointedly, the Court observed that many eyewitness identifications are problematic for any number of reasons including *inter alia* a witness's poor vision, the stress of the encounter, personal grudges and cross-racial perceptions, and most identifications procedures "involve some element of suggestion. Indeed, *all in-court identifications* do." *Id.* at 244. (emphasis supplied). In refusing to extend *Biggers*, the *Perry* Court emphasized the safeguards built into our adversary system, including the right to confront the eyewitness through effective counsel who can cross-examine the witness and argue persuasively, eyewitness-specific jury instructions, and the constitutional requirement that guilt be proven beyond a reasonable doubt.

Post-*Perry*, several federal circuit courts have concluded that there is nothing impermissibly suggestive about an initial in-court identification even

11

when it is obvious that the defendant is the person sitting with counsel at the defense table. *U. S. v. Morgan,* __ F.Supp.3d __ , 2017 WL 1277419 (D. D.C. 2017) (collecting cases). *See also U.S. v. Hughes,* 562 F.Appx. 393, 398 (6th Cir. 2014) (in-court identification of only African-American in courtroom was not impermissibly suggestive because *Perry* clarifies that due process rights are met through "ordinary protections in trial.") However, in *Morgan,* the federal district court opted to read *Perry* as rejecting judicial prescreening of *all* in-court identifications but not changing the concept that some circuits applied pre-*Perry, i.e.,* "due process concerns require such screening for an initial in-court identification that is equivalent to a one-man showup." 2017 WL at 1277419 at 3.

Having considered *Perry* and other authorities, we decline to extend *Biggers* to in-court identifications. The trial safeguards identified in *Perry* were present and fully utilized here and there is no sound basis for requiring a post-trial hearing wherein the trial judge would assess the reliability of Page's identification of Fairley.[7] We trust that these same safeguards will continue to protect the rights of defendants first identified in court, leaving the jury with responsibility for assessing the credibility of the identification in each case. As often noted, throughout Anglo-American history, "[d]ecisions as to human life, liberty and public and private property have been routinely made by jurors and

---

[7] In *Wilson,* this Court held that "it is within the sound discretion of the trial court to determine whether an independent pretrial line-up is necessary." 695 S.W.2d at 858. Nothing in today's opinion limits that discretion.

extraordinary confidence has been placed in this decision-making process." *Curry v. Fireman's Fund Ins. Co.*, 784 S.W.2d 176, 178 (Ky. 1989).

## II. The Trial Court Properly Instructed the Jury.

Fairley further contends that the trial court erred by failing to instruct the jury on the lesser-included offense of facilitation to first-degree robbery. This argument is properly preserved, and we review the trial court's decision "not to give a jury instruction . . . for abuse of discretion." *Hunt v. Commonwealth*, 304 S.W.3d 15, 31 (Ky. 2010) (citing *Williams v. Commonwealth*, 178 S.W.3d 491, 498 (Ky. 2005)).

"The trial court is required to instruct the jury on the 'whole law of the case, and this rule requires instructions applicable to every state of the case deducible or supported to any extent by the testimony." *Murphy v. Commonwealth*, 509 S.W.3d 34, 48 (Ky. 2017) (quoting *Taylor v. Commonwealth*, 995 S.W.2d 355, 360 (Ky. 1999)). Additionally, the trial court is obligated to "instruct the jury on all lesser-included offenses which are supported by the evidence." *Yarnell v. Commonwealth*, 833 S.W.3d 834, 837 (Ky. 1992).

Kentucky Revised Statute (KRS) 506.080 sets forth the elements of criminal facilitation to commit a crime and states in pertinent part, "[a] person is guilty of criminal facilitation when, acting with knowledge that another person is committing or intends to commit a crime, he engages in conduct which knowingly provides such person with means or opportunity for the

commission of the crime and which in fact aids such person to commit the crime."

At trial, Fairley requested the trial court to instruct the jury on the lesser-included offense of facilitation to first-degree robbery. The basis for Fairley's request was his testimony that he witnessed an African-American man beating a white male and offered the assailant a ride to another area of town. The prosecutor objected, explaining that in his testimony Fairley did not claim knowledge of an ongoing robbery, but rather an assault. Ultimately, the trial court declined to instruct the jury on facilitation to first-degree robbery.

The trial court properly denied Fairley's request for a facilitation to first-degree robbery jury instruction as it was not supported by the evidence. In his trial testimony, Fairley explicitly denied knowing that a robbery was taking place, claiming instead that he witnessed an assault. To facilitate first-degree robbery, Fairley needed to have knowledge that an individual was committing or intending to commit robbery and then take steps to aid them in the completion of the criminal offense. As Fairley denied knowing that a robbery was ongoing, he lacked the requisite mental state to commit facilitation to first-degree robbery. Accordingly, the trial court properly denied Fairley's requested jury instruction.

## III. There was Sufficient Evidence to Convict Fairley of Receiving a Stolen Firearm.

Fairley also contends that there was insufficient evidence to sustain his conviction for receiving a stolen firearm. He concedes that this allegation of error is unpreserved, but has requested that the Court review this allegation of

14

error for palpable error under Kentucky Rule of Criminal Procedure (RCr) 10.26. The palpable error rule requires reversal when "manifest injustice has resulted from the error." *Elery v. Commonwealth*, 368 S.W.3d 78, 98 (Ky. 2012) (quoting RCr 10.26). In evaluating whether there has been manifest injustice, the Court focuses "on what happened and whether the defect is so manifest, fundamental and unambiguous that it threatens the integrity of the judicial process." *Martin v. Commonwealth*, 207 S.W.3d 1, 5 (Ky. 2006).

At trial, the Commonwealth established the stolen nature of the firearm through the testimony of Officer Ronald Ingram of the Hopkinsville Police Department. Officer Ingram recounted that in June 2013, he had prepared a report detailing information about a firearm that had been stolen from an automobile. As part of that report he recorded the serial number of the weapon and entered the information into the National Crime Investigative Center (NCIC) database. When Fairley was arrested, the police found that stolen gun in the rear passenger compartment of the car in which he was sitting, approximately a foot away from him.

At trial, Fairley denied ownership of the weapon and explained that he was incarcerated on the date it was reported stolen. Further, Fairley claimed that he did not even realize that the firearm was in the car when he was apprehended by police, alleging that the gun had been obscured by newspapers in the backseat of the vehicle.

On appeal, Fairley contends that there was insufficient proof presented by the Commonwealth to establish that he knew or had reason to know that

15

the firearm was stolen.[8] While he reiterates that it was not his gun, Fairley raises for the first time the argument that the length of time from when the gun was stolen to its recovery in Fairley's possession (approximately fifteen months) was too long to serve as evidence establishing Fairley's knowledge that the gun was stolen. Fairley argues that the presumption in KRS 514.110(2) which states "[t]he possession by any person of any recently stolen movable property shall be prima facie evidence that such person knew such property was stolen," should not apply because a fifteen-month period is too long to be considered "recently stolen."

In considering what meaning to give to the term "recently stolen" we note that "[t]he term 'recently' in this connection has no fixed and definite meaning, and is a variable term, depending upon other circumstances." *Considine v. United States*, 112 F. 342, 349 (6th Cir. 1901). Admittedly whether the firearm at issue was "recently stolen" is a close call given the fifteen-month period between the theft of the firearm and its recovery. We note that courts have found lengthy lapses of time (*albeit* shorter than the one presented here) to be within the permissible time limitation of the presumption. *See e.g. Lee v. United States*, 363 F.2d 469, 475 (8th Cir. 1966) (lapse of five months from

---

[8] KRS 514.110(1) states:

A person is guilty of receiving stolen property when he receives, retains, or disposes of movable property of another knowing that it has been stolen, or having reason to believe that it has been stolen, unless the property is received, retained, or disposed of with intent to restore it to the owner.

time of burglary to apprehension with stolen securities sufficiently recent to justify inference of guilt); *Hale v. United States*, 410 F.2d 147, 151 (5th Cir. 1969) (six-month period from time of automobile theft to vehicle's recovery sufficient to infer guilty knowledge); *But see Gargotta v. United States*, 77 F.2d 977, 982 (6th Cir. 1935) (possession of pistols 293 days after theft, "cannot in any sense be considered so recent a possession as to sustain a finding of guilty knowledge that the property was stolen.").[9]

Fairley did not raise this issue at trial but now insists that the recovered handgun was not "recently stolen" so as to bring into play the presumption in KRS 514.100(2). This argument misses the mark on palpable error review. A stolen handgun (used in the robbery of Page given the DNA analysis) was in Fairley's possession. He testified that he did not own the gun, he was incarcerated when it was stolen, and he did not realize it was in the car he was sitting in. However, in his testimony Fairley also admitted to being a convicted felon and a drug dealer and he tried repeatedly to distance himself from the handgun found within inches of him at the time of his arrest, when he was the only person seated in the car. We cannot say that the palpable error standard is met here because there simply is no manifest injustice on these facts.

---

[9] Fairley also cites this Court to *Hayes v. Commonwealth*, 175 S.W.3d 574 (Ky. 2005), in which the Court noted in dicta that the theft of a motorcycle three to four months before it was recovered was insufficient to trigger the presumption in KRS 514.110(2).

17

## IV. The Commonwealth's Questioning of Fairley Regarding His Violent Past Did Not Constitute Palpable Error.

Fairley argues that the Commonwealth erred by impermissibly questioning him about a prior bad act – an assault. He concedes that this argument is unpreserved and again requests palpable error review under RCr 10.26.

During Fairley's direct examination, he opined that he was a "nice" guy. On cross-examination, the following exchange occurred:

Prosecutor: You said you were a nice person, do nice people assault people?

Fairley: I'm not gonna say nice people don't assault people, I feel if . . .

Prosecutor: Have you ever assaulted anyone?

Fairley: Yes sir.

Prosecutor: Ok.

The Commonwealth contends that Fairley "opened the door," to the discussion of his prior assault by claiming to be a "nice" person. Fairley contends that the Commonwealth was not permitted to address specific instances of Fairley's conduct, such as his prior assault.

"Generally stated, 'opening the door' to otherwise inadmissible evidence is a form of waiver that happens when one party's use of inadmissible evidence justifies the opposing party's rebuttal of that evidence with equally inadmissible proof." *Commonwealth v. Stone*, 291 S.W.3d 696, 701-02 (Ky. 2009). However, where the defendant places his character at issue, the Commonwealth is limited to character evidence in the form of reputation or

18

opinion, and is barred from raising specific instances of conduct. *Purcell v. Commonwealth*, 149 S.W.3d 382, 399 (Ky. 2004) *overruled on other grounds by Commonwealth v. Prater*, 324 S.W.3d 393, 400-01 (Ky. 2010) (citing Kentucky Rule of Evidence (KRE) 405(a)).

In the case at bar, the Commonwealth impermissibly questioned Fairley about a prior bad act – the assault – to rebut his assertion of good character. While the Commonwealth's questioning was improper, we do not find that the introduction of this evidence rises to the level of palpable error. We note that the questioning about Fairley's prior assault was brief and made up a fleeting portion of his trial, while the evidence of Fairley's guilt was substantial. We thus conclude that while the Commonwealth's questioning of Fairley about his prior assault was error, this error was not palpable.

## CONCLUSION

For the foregoing reasons, we affirm the conviction and sentence of the Christian Circuit Court.

All sitting. All concur.

COUNSEL FOR APPELLANT:

John Gerhart Landon
Assistant Public Advocate
Department of Public Advocacy


COUNSEL FOR APPELLEE:

Andy Beshear
Attorney General of Kentucky

Perry Thomas Ryan
Assistant Attorney General

# Supreme Court of Kentucky

## 2016-SC-000021-MR

JOHN FAIRLEY, III             APPELLANT

           ON APPEAL FROM CHRISTIAN CIRCUIT COURT
V.            HONORABLE ANDREW C. SELF, JUDGE
           NO. 14-CR-00551

COMMONWEALTH OF KENTUCKY            APPELLEE

## ORDER OF CORRECTION

The Opinion of the Court by Justice Hughes rendered on September 28, 2017, is corrected on its face by the substitution of the attached Opinion in lieu of the original Opinion. The correction does not affect the holding of the original opinion rendered by the Court.

ENTERED: October 20, 2017

CHIEF JUSTICE