RENDERED: MARCH 22, 2024; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-1114-MR

ANGELA WYNN WORKMAN                                                    APPELLANT

APPEAL FROM MASON CIRCUIT COURT
v.          HONORABLE STOCKTON B. WOOD, JUDGE
ACTION NO. 20-CR-00113

COMMONWEALTH OF KENTUCKY                                                APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: ACREE, GOODWINE, AND JONES, JUDGES.

JONES, JUDGE: Angela Workman appeals from the Mason Circuit Court's

judgment following conviction at her jury trial. The trial court sentenced

Workman to a concurrent term of five years' imprisonment after finding her guilty

of operating a motor vehicle under the influence of alcohol (DUI) (fourth or

subsequent offense with an aggravator) and driving on a DUI-suspended license (first offense). After a thorough review of the facts and the law, we affirm.

## I. BACKGROUND

At approximately 11:00 p.m. on November 11, 2019, Deputy John Ferguson of the Mason County Sheriff's Department was dispatched to the area of Mayslick Road to follow up on a report of a motor vehicle accident. When the deputy arrived, he found a red Mini Cooper wedged against the guardrail and facing the wrong direction of traffic. Deputy Ferguson identified himself to Workman, who was the driver and sole occupant of the vehicle. The deputy's first questions were about whether she was injured, and Workman did not initially respond. Because Workman was initially unresponsive and moved somewhat lethargically, Deputy Ferguson believed Workman may have been under the influence of drugs or alcohol. The deputy's belief was reinforced when Workman exited the vehicle smelling strongly of alcoholic beverages.

In his later testimony, Deputy Ferguson described Workman as swaying, staggering, and with bloodshot eyes. In his words, Deputy Ferguson described Workman as being "wilted drunk," like "when you put the hot sauce on the lettuce, it wilts down, and that's pretty much the demeanor that I perceived from her that night." The deputy elected not to administer a preliminary breath test, believing it was unnecessary. He also elected not to give Workman the

-2-

standardized field sobriety tests[1] because he did not believe she was capable of standing and walking without injuring herself.

Despite Workman's pleas to just "let her go," Deputy Ferguson arrested Workman for operating a motor vehicle under the influence of alcohol and driving on a DUI-suspended license. He transported her to the Mason County Detention Center for a breath test because it was the only location nearby with an Intoxilyzer breath-testing machine available at that hour of the evening. After beginning the required observation period,[2] the deputy read the implied consent warning form to her, asking her if she consented to a test of her breath while also warning her of the penalties associated with refusing to submit to the deputy's requested test. Workman refused to submit to the deputy's breath test, and she did not sign the form indicating her refusal.[3] However, when Workman was booked

---

[1] The standardized field sobriety test (SFST) battery consists of the walk and turn, the one-leg stand, and the horizontal gaze nystagmus tests. SFST training is developed and promulgated by the National Highway Traffic Safety Administration (NHTSA) and the International Association of Chiefs of Police (IACP). *See* NATIONAL HIGHWAY TRAFFIC SAFETY ADMINISTRATION, "DWI Detection and Standardized Field Sobriety Testing (SFST) Refresher – Instructor Guide," (Rev. 10/2015) https://www.nhtsa.gov/sites/nhtsa.gov/files/documents/sfst_ig_refresher_manual.pdf (last accessed Mar. 1, 2024).

[2] "The procedures established in this section shall apply to breath alcohol tests. (1) A certified breath test operator shall have the person under personal observation at the location of the test for a minimum of twenty (20) minutes prior to the breath alcohol analysis. During that period the subject shall not have oral or nasal intake of substances which will affect the test." 500 Kentucky Administrative Regulations (KAR) 8:030 Section 1, as authorized by Kentucky Revised Statutes (KRS) 189A.103.

[3] From the record, it appears that Mason County does not follow the usual practice of asking an arrestee to sign an implied consent form before taking the breath test. Instead, there is a single

into the detention center, she willingly allowed the deputy jailer to test her urine for drugs as part of the intake process. Based on this incident, the grand jury indicted Workman for operating a motor vehicle while driving on a DUI-suspended license, first offense,[4] and operating a motor vehicle under the influence of alcohol, fourth or subsequent offense within a ten-year period,[5] aggravated by her refusal to take the requested breath test.[6]

On the morning of trial, Workman moved the court to suppress statements about her previous DUI convictions. By stipulation with the Commonwealth, the trial court ruled the parties could inform the jury that Workman was driving on a suspended license at the time of this incident but without specifying the reason for the suspension. A second issue, not so easily resolved, was that Workman signaled her intent to call the jailer to testify about her submission to the jailer's requested urine screen. The Commonwealth objected, stating the urine screen had no probative value because it did not test for alcohol.

---

implied consent form kept near the Intoxilyzer, and the deputies read this form to arrestees. Deputy Ferguson testified that he read this form to Workman verbatim, asked the questions as indicated on the form, and she refused his request for a breath test at the end of the reading.

[4] KRS 189A.090, a Class B misdemeanor.

[5] KRS 189A.010(5)(d), a Class D felony.

[6] KRS 189A.010(11)(e). The presence of an aggravating circumstance increases the mandatory minimum term of imprisonment to two hundred forty days, pursuant to KRS 189A.010(5)(d).

The trial court deferred ruling on the matter, as it had not yet seen the documentation surrounding the urine screen.

Workman's trial took place over a single day with only a few witnesses. First, Deputy Ferguson testified to his recollection of the incident, consistent with the aforementioned narrative. After the deputy testified, however, Workman informed the trial court at the bench that she would be calling Lisa Yeary, the Mason County Jailer, to testify about her submission to the urine screen at the jail. Again, the Commonwealth objected, stating that the only purpose for that line of questioning is to try to refute the contention that Workman refused a requested test for the purpose of the DUI aggravator. The Commonwealth further argued that the jailer's urine screen is taken for a different purpose than the blood, breath, or urine tests for DUI under KRS Chapter 189A. In sum, the Commonwealth urged the trial court to disallow questions about the urine screen because they were not relevant and would only serve to confuse or mislead the jury. For her part, Workman argued she should be able to discuss the urine screen because it was a record provided by the Commonwealth as part of discovery. After hearing these arguments, the trial court ruled that Workman's signed form for the urine screen would be admitted as part of the record; however, the trial court also ruled the drug screen would not be presented to the jury because it had nothing to do with Workman's refusal of Deputy Ferguson's requested test.

Workman ran afoul of the trial court's ruling almost immediately. On direct examination of Lisa Yeary, Workman began to ask questions about drug testing at the jail. The Commonwealth objected to the question and, at the bench, stated the jury should not have heard about the jailer screening. Workman argued she was merely laying a foundation to introduce the urine screen by avowal. The Commonwealth retorted that avowals are not conducted in front of the jury. The trial court responded that it appeared that Workman was trying to get the urine screen in front of the jury "by the back door."

The situation deteriorated further, regarding the urine test issue, when Workman took the stand to testify. Workman readily admitted that she should not have been driving on a suspended license. She also admitted that before driving, she had helped a friend consume a bottle of wine on an empty stomach. When asked about why she did not submit to the breath test, she claimed she told Deputy Ferguson that she could not physically take a breath test because she suffered from COPD[7] and emphysema. Then she quickly added, "And on there [the form] there was something about urine, and I took a urine test." She repeated the reference a

_____

[7] "Chronic obstructive pulmonary disease, or COPD, refers to a group of diseases that cause airflow blockage and breathing-related problems. It includes emphysema and chronic bronchitis." CENTERS FOR DISEASE CONTROL AND PREVENTION, "Chronic Obstructive Pulmonary Disease (COPD)," https://www.cdc.gov/copd/index.html (last accessed Mar. 1, 2024).

moment later when asked about jail personnel, saying, "[The jailer] was around when I had to pee in a cup."

The multiple successive references to the disallowed topic of the urine screen drew yet another objection from the Commonwealth. At the ensuing bench conference, the Commonwealth said that Workman was repeatedly attempting to circumvent the trial court's ruling. Workman's counsel, in turn, claimed he did not attempt to elicit this testimony from Workman. The Commonwealth expressed skepticism of this claim. This prompted the following exchange at the bench:

> Commonwealth: Has [Workman] opened the door on her four prior refusals? I think she has.
>
> Defense: In what way?
>
> Commonwealth: That she can't take a test. . . . She knows the difference between the tests.

The trial court then ruled that, based on Workman's testimony, she had opened the door to questions on introductions of her prior refusals and knowing the difference between the tests given. Workman then moved for a mistrial, which the trial court denied.

When defense counsel resumed direct examination of Workman, she immediately began by reiterating, "I was offered a urine test." Apparently chastened by the recent bench conference, Workman's counsel finally attempted to guide her away from that topic. Workman admitted that she had drunk alcohol but

denied that she was intoxicated. She stated that the incident made her feel catatonic, scared, humiliated, and disappointed. Regarding her refusal to take the breath test, she admitted that Deputy Ferguson asked her multiple times to take it, and she refused, saying she could not do it, but she then attempted to argue that the form said "blood, urine, or breath." On cross-examination, Workman made a number of damaging admissions, including that she had issues with alcohol, that she had asked Deputy Ferguson to let her walk away instead of arresting her, that Deputy Ferguson had requested a breath test, and that she understood the consequences of refusing the breath test. The Commonwealth then asked Workman about whether she had refused breath tests on previous occasions. Workman's counsel objected to the question, and the trial court overruled the objection, directing Workman to answer. Workman then admitted she had refused breath tests on previous occasions.

Upon the submission of all evidence, the jury deliberated and found Workman guilty of operating a motor vehicle under the influence of alcohol (fourth or subsequent offense with aggravating circumstances) and driving on a DUI-suspended license (first offense). The jury thereafter recommended a total term of five years' imprisonment, and the trial court sentenced Workman in accordance with the jury's recommendation. This appeal followed.

## II. ANALYSIS

For her primary issue on appeal, Workman contends the trial court committed reversible error when it allowed the jury to hear testimony regarding her prior DUI arrests. Like other evidentiary issues, we review such decisions for abuse of discretion. "[T]he trial court has discretion to determine whether or not to permit impeachment on collateral issues when a party has opened the door to such issues by raising them in direct testimony." *Commonwealth v. Prater*, 324 S.W.3d 393, 399 (Ky. 2010). The admissibility question here revolves around whether Workman "opened the door" to the questions about her previous DUIs.

> As for "opening the door," the trial court presumably was referring to the doctrine of "curative admissibility," *i.e.*, when one party introduces improper evidence, such "opens the door" for the other party to introduce improper evidence in rebuttal whose only claim to admission is that it explains or rebuts the prior inadmissible evidence.

*Metcalf v. Commonwealth*, 158 S.W.3d 740, 746 (Ky. 2005) (citations omitted). "Generally stated, 'opening the door' to otherwise inadmissible evidence is a form of waiver that happens when one party's use of inadmissible evidence justifies the opposing party's rebuttal of that evidence with equally inadmissible proof." *Fairley v. Commonwealth*, 527 S.W.3d 792, 802 (Ky. 2017) (quoting *Commonwealth v. Stone*, 291 S.W.3d 696, 701-02 (Ky. 2009)).

The main thrust of Workman's appeal on this issue is that a recent Supreme Court case, *Hemphill v. New York*, 595 U.S. 140, 142 S. Ct. 681, 211 L. Ed. 2d 534 (2022), "cast serious doubt on the continued viability of the 'opening of the door' doctrine[.]" (Appellant's Brief at 13.) We disagree as to the applicability of *Hemphill* to this case. *Hemphill* involved the admission of a third party's plea allocution to correct a defendant's allegedly misleading statement at trial. *Id*., 595 U.S. at 151, 142 S. Ct. at 691. The Supreme Court held that this "admission of unconfronted testimonial hearsay" violated the Confrontation Clause of the Sixth Amendment of the United States Constitution. *Id*., 595 U.S. at 156, 142 S. Ct. 694. Despite Workman's contention that this case implicates a similar violation of the Confrontation Clause, requiring reversal, the two cases are factually dissimilar. Workman herself was on the stand under cross-examination by the Commonwealth when asked about her previous breath tests. There was no "unconfronted testimonial hearsay" as in *Hemphill*, and the Confrontation Clause was not implicated by Workman's questioning. *See Fisher v. Commonwealth*, 620 S.W.3d 1, 5 (Ky. 2021) ("The Confrontation Clause applies only to testimonial hearsay statements.").

As a secondary related issue, Workman contends the trial court erroneously failed to grant her motion for a mistrial, arguing the questions about her previous DUI experiences should not have been asked in front of the jury.

-10-

Although, "the decision to grant a mistrial is within the sound discretion of the trial court[,]" *Commonwealth v. Padgett*, 563 S.W.3d 639, 647 (Ky. 2018), "a mistrial is an extreme remedy and should be resorted to only when there is a *fundamental defect* in the proceedings and there is a '*manifest necessity* for such an action.'" *Id.* at 645 (quoting *Woodard v. Commonwealth*, 147 S.W.3d 63, 68 (Ky. 2004) (emphasis added in *Padgett*)).

Although Workman is correct that questions about prior DUI encounters are not normally admissible during the Commonwealth's case-in-chief, *see, e.g.*, *Dedic v. Commonwealth*, 920 S.W.2d 878 (Ky. 1996), here the trial court did not abuse its discretion in its decision to admit those questions in order to counter Workman's inadmissible references to the jailer's urine screen. On multiple occasions before the bench, the Commonwealth astutely argued that this line of questioning was not only irrelevant but would be likely to confuse or mislead the jury, and the trial court consequently ruled such references were inadmissible. It was Deputy Ferguson's request for a breath test which controlled under KRS 189A.103, and Workman's preference for the jailer's urine test was not operative here. *Commonwealth v. Duncan*, 483 S.W.3d 353, 356-57 (Ky. 2015).

Despite the trial court's ruling, Workman frequently and gratuitously inserted the fact that she took a urine test in an apparent attempt to persuade the jury that she did not refuse the only requested test which mattered – Deputy

-11-

Ferguson's breath test. In response, the trial court allowed the Commonwealth to inquire into Workman's previous experiences with breath tests to illustrate that she knew which tests were required of her, under the doctrine of curative admissibility. Workman's motion for mistrial was grounded in the trial court's admission of normally inadmissible testimony, but she ignores that the trial court allowed the testimony as a response to her own improper conduct. We discern no manifest necessity for a mistrial and no abuse of discretion in the trial court's decision to deny Workman's motion.

## III. CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment.


ALL CONCUR.


BRIEF FOR APPELLANT:                    BRIEF FOR APPELLEE:

Michael J. Curtis                       Daniel Cameron
Ashland, Kentucky                       Attorney General of Kentucky

                                        Melissa A. Pile
                                        Assistant Attorney General
                                        Frankfort, Kentucky